Mr. Walker, whenever you are ready, you may proceed. Mr. Walker, may I be the first? You're talking about 311 and you had previously submitted or the defense previously submitted to non-IPI instructions. Are you withdrawing the argument with respect to those? Your Honor, I can just get to that argument right now. In terms of whether the trial court should have specifically issued 311, we're stating that it was, the trial court either should have issued 311 or if you found that instruction confusing given the circumstances, it would not have been an abuse of power. That's exactly what the issue was that the trial court was using. So that's what that means. And let me just ask you real quickly so we can address this issue, the issue of forfeiture. Where the State believes that you have forfeited this issue, how is it not a forfeiture? This argument isn't forfeited simply. Are we discussing 311? Yeah, I think that's what they are submitting, that you forfeited that argument. Because the instructions weren't in the record. The non-IPI weren't in the record, and then the 311 actually wasn't in the record. Okay, thank you. Yes, I was thinking quite about that. The Illinois Supreme Court people we've never seen stated that an argument is forfeited when the court can't tell from anywhere in the record what instruction was issued. In this case, it's clear that 311 was given to the trial court. In fact, the court stated at the motion to reconsider hearing, it quoted the initial paragraph of IPI 311 when it stated, because they have the word ordinarily in brackets. So evidence of this kind ordinarily may be considered by you only for the limited purpose of deciding the way to be given the evidence you heard from the witness in this court. That was in the motion for a new trial record. That was in the motion for a new trial record. But prior to that, they had referenced IPI 311 by name during the jury instruction conference. And what exactly was 311 going to tell the jury that they didn't already know from the actual instructions they were given about witness credibility, about you're responsible to decide who's telling you the truth and not telling you the truth? What did they learn from 311? Or would they have learned from 311? 311 would have tilted Trooper Clinton's credibility toward disbelief rather than having it presumably on equal footing with the rest of the witness testimony. It emphasized the fact that Trooper Clinton did not preserve key information in his report. It's important to remember that in this case, Trooper Clinton testified that there were three men in the car and that he saw the defendant, luckily saw the defendant, driving the car while also radioing dispatch, operating his headlights, driving at approximately 70 miles per hour. He was driving in a construction zone. All of this went toward Trooper Clinton's believability. So you had 1.02 where it talks about you are the judges of the credibility of the witnesses, the believability instruction. And you had 3.15, which was the ID. Wouldn't the two of them together suffice? As this court held in People v. Eggert, 1.02 is not sufficient. Similarly, 3.15 would be in the same vein as 1.02 when addressing the fact that the state only had one eyewitness to this incident. Well, it was corroborated by the others, the other two police officers, right? His ID? His ID wasn't corroborated by the other two police officers, but Craig Singleton was found later on to be in this Brown GMC. But it's important to remember that that night there were three other men in the car. So to that extent, IPI 3.11, in a case as close as this where the jury was initially 7-5 in favor of Quill, could have tilted the scales, could have rendered my client not guilty. Well, you're not arguing, are you, that this was an intentional withholding of information? You're saying that it was an omission, correct? Correct. It was an omission. Trooper Clinton had a duty to provide an accurate report. And any omissions in that report are substantive omissions according to Illinois case law. The state had relied on several cases, People v. Miller, People v. Cannon, several other cases. Can you distinguish those cases, or what is the difference between those cases and the case that we have here that you say is on point with Eager? Just to sum it up, my reply brief, I believe I went over that pretty extensively. But in this case, the crucial distinction is that the state had one eyewitness. That eyewitness provided, I won't say unbelievable testimony, but strange testimony. We have this individual saying that he's able to see three people in the car, driving at 70 miles, 70 plus miles per hour, in a construction zone, operating his lights, and calling the dispatch. But he really didn't get a very good look at the people in the back seats, the person in the back seat by his own admission, because wasn't that back seat window tinted? So now we're really down to two people. So if we look at it jumping forward, Trooper Clinton traced the vehicle, and then based on tracing that vehicle, he came into contact with Craig Singleton. Could we have any reason to believe that he fabricated his testimony based on having seen Singleton on November 8th? But 311 doesn't talk about fabrication. It talks about wait to be given to the testimony. Correct. Not admissibility, which might relate to whether it was fabricated. There could be a finding. This is just, what part does this play? What part does his omissions, the fact that he doesn't describe the identity very well, it's a black man, it's a scruffy hair, scruffy appearance. How does this relate to fabrication? He testified that there were three black men in that car. And he said that he saw the individual driving for three seconds. Again, it's important to remember that he was doing a lot of things at that time. But don't you have to focus on what he omitted in his police report? Correct. And he omitted any real details about what the driver looked like. And those omissions were material omissions. Yes. As to the cumulative prejudice engendered by the second issue, which is the state's... Before we get there, what is our standard of review on the first issue? The standard of review on that issue, I believe, is abuse of discretion. Failure to give the instruction is an abuse of discretion. Failure to give the instruction is an abuse of discretion, correct. How about whether a particular instruction sets out the law applicable to the case? How do we review that? One moment, please. In most cases, your honor, it just defaults to abuse of discretion. There's a de novo issue in this case. Well, the committee note on 311 says the materiality of an earlier statement is a question of law for the court to decide. So if we get to the issue of... We have to get to the issue of whether or not the omissions that you're citing are material. And if that is a question of law for the court to decide, wouldn't that also be a question of law for us to decide? It would be de novo. Correct. It would be de novo in that case. But I believe that this Court's precedent in Haggard controls this issue. So in either case, I think the issue is clear, given the 75 omissions that were given. But wasn't one of the problems in Haggard that, you know, it wasn't actually offered? That instruction wasn't offered. Here we have the instruction offered, and the judge gives us his position on why it should not be allowed. So we have the information that Haggard didn't have that we need to decide. That's a significant difference, isn't it? I wouldn't say it's significant, as the primary issue in Haggard was the fact that the State only had one option in this. And in that case, IPI 1.02 was submitted. So substantively, I think this is on all fours with Haggard, in terms of the essence of that case. So moving on to the second issue, the improper statements made by the prosecutor. I do believe they summed them up. The prosecutor engaged in burden shifting. His statement was that the jury wouldn't have been present in court that day had the defendant acted like a law-abiding citizen. It seems to suggest that Craig Singleton had to prove his innocence to the jury, that he was presumed guilty at that time, because the jury wouldn't be there if he wasn't guilty. So acting as a law-abiding citizen wouldn't have been that day in court. It would have been when he was traveling in excessive speed. But that assumes that the defendant was, in fact, traveling in excessive speed. Well, we know the speed of the vehicle. The issue is identity. Correct. We do not know whether Craig Singleton is the one driving. Again, there were three black males in the car. Well, wait a minute. So any fleeing and attempting to elude that the prosecutor can't argue we wouldn't be here if the defendant had pulled over? There are arguments the defendant was driving. They're claiming there's enough evidence for that. How is that shifting the burden to the defendant? I mean, they're basically just saying, you know, he committed this offense. If he didn't commit the offense, he wouldn't be here. He committed the offense. Isn't that tied more to the facts than to shifting the burden? I think it is connected to the facts. But it oversteps the facts. It goes beyond the facts to suggest that he is guilty and has to prove his innocence. It's stating that we wouldn't be here. Well, I mean, as a prosecutor, you're going to argue he's guilty. I mean, you're not going to suggest it. You're going to say it. You're going to hammer it home that he's guilty. There's a big difference between saying a defendant is guilty and arguing that to the jury and saying the facts show that he's guilty and shifting the burden, saying that the defendant has to present something to counter. In this case, the prosecutor is not only reflecting the passions of the jury by stating that he's wasting your time being here. He's implicitly stating he's wasting all of our time being here because we wouldn't be here had he simply pulled over. Rather than simply stating that Trooper Clinton saw this individual in the car, it's clear he's guilty because Trooper Clinton testified to this. He's putting the onus on Singleton, stating that he's the reason why we're here, not Trooper Clinton's identification or anything to that nature. He's concluding, conclusively stating that Singleton, he's implicitly stating that Singleton was that individual in the car. He's the reason why you're here, which I think oversteps simply stating that he's guilty based on the facts. But... What about the trick comment? Again, the trick comment, although somewhat subtle, he states that the defense was trying to trick the jury. Now, it would be different if there were multiple co-defendants or something of that nature. But in this case, they could only imply trial counsel and the defendant. So by stating that without any basis for suggesting that the defense was trying to trick the jury, that was a clear violation of Illinois Supreme Court law. Maybe... Why? Let's... Let me get a better... Why is it a clear violation? As the Illinois Supreme Court stated in... Let's see. People v. Hudson. The... For instance, the whole theory that the defense concocted to present you here, to present here in court, would be laughable, would be improper to necessarily imply that the defense played a role in its creation. So these comments said... Well, the trick went to, as I recall, or if they're... In reading the whole thing, it went to his parents. Correct? That he had... I mean, as a lot of people do, they come to court in Sunday best. And he had either done something with his hair or dressed differently than the police officer described him on that night. Correct? That would be a separate issue. In this case, the prosecutor was responding to Ms. Nebdal's critiques of Trooper Clinton's testimony. Importantly, the prosecutor stated that she was attempting to shift the spotlight. That was one of her focuses during her closing argument. To shift the spotlight away from Singleton in order to Trooper Clinton. So in this case... Well, that makes sense because a lot of the testimony revolves around where that spotlight was faced at the time of the chase. Correct, but there was no trick in that. It's simply highlighting Trooper Clinton's contradictory testimony or his... Yeah, but it wasn't really contradictory because the camera was on and you could tell that the spotlight was on. Correct, the spotlight wasn't. But the issue here is whether Ms. Nebdal was attempting to trick the jury by highlighting these portions of Trooper Clinton's testimony. It was no trick, it was just a simple recitation of what Trooper Clinton testified to. So the state's claim was baseless in that sense. If there are no other questions, I will conclude by stating that based on the cumulative prejudice in my client by the prosecutor's statements and the trial court's refusal to issue IPI 3.11, this court should vacate the conviction and reverse and remand it before a new trial. Thank you. Thank you. All right, Ms. Schwinn. Did you have those the last time we saw you? I remember. I had that. When was it? It's been a... My goodness. It's been a 2019 for me. Yeah. But I think... Well, I hope you have a driver today or someone who can assist you in this regard. My colleagues would like me to just be in bubble wrap at all times. Wrap her up in gauze and put her at her desk. May it please the court, counsel, good afternoon. Just two brief things before I start. I did want to note, for your honors, I apologize. Counsel did bring it up in his reply brief. I missed, through a typo, stated 3.14 on the eyewitness jury identification instruction. It should be 3.15, and I apologize to the court for that. And I also would just like to thank the court for rescheduling this argument on my motion request. So I thank you for that. Since we know what's going on here in this case, how is it that the issue of ID, what was left out, was not material? Because basically that's the question here. We have to address whether the admissions were material. I mean, he comes in how many months later? Five months later, then he had the report and he remembers all of this stuff, but didn't put any of it in the report. Right. I think we need to step back first to determine whether or not the instructions that were given were sufficient. And I think at this point, IPI 1.02, when combined with IPI 3.15, is sufficient to identify to the jury considerations to take into consideration when determining the eyewitness's credibility of identifying the defendant and the believability of the witnesses. And I believe, as we set forth in our brief, but the factors for 3.14 do discuss the witness's earlier description of the offender. 3.15. 3.15. I'm so sorry about that. 3.15. The factors that they do discuss are factors that the defense counsel highlighted in her closing argument and as omissions, which would be the degree of attention that the witness paid to the offender at the time they identified him, the earlier description of the offender, the level of certainty shown by the witness, the opportunity the witness has to view the offender at the time of the offense. Those instructions together don't talk about how to look at that evidence. So it doesn't say and hone in on the believability of the witnesses and the believability may be challenged by the prior inconsistent statement. I mean, we would agree with that. They talk about what to look at when you're looking at ID and when you're looking generally at witnesses, but not that the believability can be challenged by omission, by omission. The weight. So the weight to be given. The, I do agree that 3.11 does set forth that there is the opportunity of believability and prior inconsistent statements. I think that here, as the trial court found, the argument that was proffered by the defense counsel discussed issues of believability, which is what 1.02 and 3.15, you know, spoke to. There are cases that talk about, such as People v. Miller and the other cases that I cited in my brief, where when those instructions are given, 3.11 is, it is not error for the court to decline to give it. But I mean, Eggert says otherwise. Eggert, I believe, is an outlier of the case, particularly due to the circumstances and specific facts of Eggert. In Eggert, it was a DUI case. There is a sole witness, which is the trooper, I believe he's a trooper, who pulled over the defendant. In his report, he did not talk about any, in his report, there were, there was no evidence that he went over the line. There was no evidence regarding field sobriety tests. There was no evidence regarding a blow. And, in fact, at the grand jury testimony, he did not talk about whether or not he weaved over the line or there were any field sobriety tests. So it was just the trooper's testimony. That's not the case here. While Trooper Clinton was a significant witness here, he was not the only piece of evidence. There is a SWAT card video, which also details how the chase went down. There are two other troopers who testified to the identification of the defendant. Afterwards. Afterwards. There's also evidence that the defendant himself drove the same truck that the original Trooper Clinton saw the defendant in on two separate occasions in less than a month from the original time that he fled. So Eggert is focusing on the fact when there is only one person's testimony. And in that testimony, he omits certain facts. And not just facts in the police report, but he omits the facts in the grand jury testimony. He omits material facts. Yes. Because, I'm sorry. Right? He does because for the DUI, he was charged under A2, which is driving under the influence. You'd have to prove that he was incapable of driving safely. And the fact of whether or not a defendant veers over the line would be a material fact to prove that element of the offense. Isn't it true that the cases that you cite, however, Miller, Cannon, and the cases that you cite, none of those omissions in those cases were material omissions? I would agree with that. So isn't that what we're looking at, and isn't that what Eggert tells us, which is where I started when you came up, is if it is a material omission, then 311 should be given. But you're submitting that these aren't material omissions because there were other witnesses? I would argue that the – I would argue still that Eggert is an outlier and is specific to those facts, particularly because they talk about the lack of the omission at the grand jury testimony, which I will say 3.11 does discuss about substantive omission for substantive evidence versus just pure impeachment evidence. So when I read Eggert, I am uncertain if they're talking solely about the omission from the police report or about the omission from the police report plus the grand jury testimony. And as 3.11 under 1, where it states that the statement was made under oath, that would be some sort of potential issue on 3.11. So I think that Eggert is just – really has a unique set of circumstances and facts, and so I don't think that it holds as much sway in this case. But I do agree with you in terms of the materiality issue, which I think, Justice Berg, you did talk about in the committee notes under 3.11. And I would argue that these omissions here were not material. There's no – at trial, it was brought out that Trooper Clinton did state in his police report that the individual he saw driving the Acadia was a black male. He did not provide specific detail, but he did not omit that he saw somebody. And I do think that the materiality isn't regarding identification necessarily. But, you know, when you do talk about – if you were to rely on Eggert, Eggert talks about materiality to the elements of the offense. And they talk about two crucial elements, which are issues on field sobriety tests, which go to whether or not you're under the influence and driving over the line, which is whether or not you're capable of safely driving. So I would think that there's a significant difference between the materiality of those facts in Eggert versus what we have here, which is the Trooper just wasn't as descriptive as he was at the trial. Well, he was silent as to those issues, right? I think he – I would argue that he did identify who he saw in the police report. The fact that he provided more description at the trial, I don't know if I would necessarily characterize that as he was silent. He knew that, and he delivered. We had an opportunity to make those statements at the time and to put those statements in the report. He chose not to, correct? I would say, yeah, he did not put them in the report. But I believe that under the material rule, the second prong of that analysis is whether or not putting that information is something that is a normal part of the course of the conduct and investigation. And to be quite honest, as was fleshed out through this trial, the police write reports. They don't write every single detail in those reports. A lot of times it's a summarization of what happened and what transpired. And the fact that he did identify the defendant in some form or fashion, or at that point, excuse me, he did not know he was a defendant. He did identify the driver in some form or fashion. The fact that he didn't put every descriptive factor in that case that he knew of at that time, I'm not sure would qualify under that second prong of the material witness rule. But I think that at this point the trial court did discuss why he chose not to give 3.11. We would stand on our argument that 3.11 was waived because it's not a written instruction in the record, common law record. There are different brackets. Well, the trial court made an error of the law in not giving this instruction, didn't he? I look at it. You know, the appeal case is an angered anger. It says since the impeachment consist of an omission, the trial court apparently believed that IPI 3.11 did not apply. That's an anger. And of course we know that you can see that it does apply to omissions, case law tells us. Yes, I would agree with that, yes. And then the judge in this case said almost the exact same thing. In R. 328, he says this is a situation where maybe there should be an omissions instruction, but there isn't, and I'm not inclined to give a non-IPI. It seems to me like he's making the same error of law that the judge did in Agra. I think, Your Honor, when he discussed that, obviously you have the citation. I think he was discussing about the non-IPIs as opposed to 3.11, which the defense offered 3.11 as an alternative instruction, which is why I don't know why. Right after he said that, the PD says, what about 3.11? And then he says, the record reflects your request is refused. Maybe that was based on the non-IPI. Well, it was his reason for not giving the non-IPI, certainly. But he makes the comment that maybe there should be one, maybe there should be an IPI on this, and, you know, there is. I think when they were discussing that, they were discussing the definition of omission. The two non-IPIs talked about, and they're on pages 151 and 152 of the common law record, where it kind of defines omission, and it really places an emphasis on what omission should mean to the jury, and I think that was the court's comments reflecting the non-IPI. I do think the trial court did make that determination, but, you know, under any error, it is a harmless error standard on the refusal to give an instruction. And as we set forth in Argument 4 of our brief, the evidence was overwhelming at this point. Excuse me. The evidence was overwhelming for the defendant in finding him guilty of fleeing and eluding and driving while licensed and suspended. Well, we certainly have evidence that's overwhelming of the speed because it was being reported hands-free. We know where the spotlight was pointing, but we don't have a picture. We don't know what this one of three, the driver, one of three black men looked like. So his description that he recalls at time of trial and at possibly an earlier grand jury testimony is from where? Where is it coming from? His excellent memory, his photographic memory? Do we have any evidence in the record that he has that type of a gift? A photographic memory? No. There's nothing, no testimony regarding his type of memory. But we do have his recollection of the night in question and what he observed. And that was the, you know, that is for the jury, you know, when they determine the credibility of the officer, combined with the fact that 15 or 18 days later another trooper observed the defendant in the same car with a similar appearance. And then 10 or 12 days after that, the original trooper plus another trooper goes to a house to arrest the defendant, and the defendant is there in the Acadia backing out of the driveway, and he identified them, the trooper identified the defendant at that time as well. So, you know, in looking at the totality of all the evidence put forward by the state, I do believe that it is overwhelming and that the evidence does show that there's an identification of the defendant as the driver of the vehicle. So you submit harmless error? Submit harmless error, as we talked at. Harmless error or plain error, you know, is how you want to look at the 3.11. I believe that the argument in Argument 4 applies to both. If there are no questions on the IP, I can move on to the closing argument if Your Honor has had any more discussions on that. You know, I will be brief on the closing argument. Our brief sets forth our responses to the three contentious or contended improper arguments. I will note for the Court that this argument was, as we have been discussing, was about the identification or, as the defense strategy was, was misidentification by Trooper Clinton. And so much was made about whether or not Trooper Clinton could identify the defendant. And a lot of the comments were a reflection of the defense's closing argument that called into question Trooper Clinton's testimony and the believability of him. And our responses, our rebuttal responses, responded to those arguments. And if there are no other questions on the closing argument, we would just stand adjourned. Let me ask you a question. If, say, for instance, we would reverse this case based on failure of the judge to give 311, what is your position with respect to double jeopardy? And is that applicable here? No, I believe that there is sufficient evidence to find that there would be – Well, first, the defendant has raised a reasonable doubt argument. I believe that the argument, the evidence put forward at the trial, was sufficient to show that there would be – Yes, double jeopardy probably would apply. No double jeopardy. I'm blanking on the actual name of the analysis, but the evidence would be sufficient to merit another trial. If there are no other questions, we would stand on the arguments in our brief and ask that this court confirm the defendant's conviction. Thank you. Thank you, Ms. Quinn. Now be careful getting back to your seat. It's too late in the day to call the ambulance. All right, Mr. Walker, do you have any response? You may proceed. Your Honors, I'll briefly make three points here. One with regard to – I'll just leave with the harmless or plain error analysis. Under plain error, this would definitely be first-pronged plain error. The evidence is obviously closely balanced. It's proven by the fact that, again, seven jurors favored acquittal, at least initially in this case. The same applies to harmless error analysis. They would have to prove that basically there's no reasonable probability that the jurors would have found otherwise or would have not voted in favor of acquittal. Then to speak to the fact that there were three black males in the car. Again, this is an essential fact of this case. Identification is the heart of this case. The video that Trooper Clinton had did not show who was inside the car. It did show a brown jeans to Arcadia, which was admittedly registered to Mr. Singleton's mother. But again, he failed to include in his report three black males, any descriptive details of the black male driving the car. So how is that relevant or not relevant to his identification? It goes to his believability. It goes because he subsequently identified Singleton based on tracing this car back to Singleton's mother's home where he sees him in the vehicle. But one cannot presume that Mr. Singleton was the one driving the car that night, merely based on the fact that Clinton can now point to the fact that this is Craig Singleton. It seems to be what he's doing. It seems to be backtracking. It's one interpretation of the evidence. Well, when he went with the third trooper to the home in, I guess it was Lake in the Hills, and saw the vehicle backing up, was there any question as he looked at Mr. Singleton that that was the person he had seen? I mean, did he say, I'm not sure? Or did he say, that's the guy? He basically said, yes, that's the guy. But it's important to remember that at that time his initial lead was tracing that license plate, tracing that vehicle. Again, his police report omitted any details about what Singleton looked like, which would have been important given the fact that, again, there were three black males in the car. He was driving at a very high rate of speed and doing multiple tasks at that same time. So it strains credulity to believe that it's – I'll say it was possible for the jury to acquit Mr. Singleton, have this instruction be given by understanding that there was a certain way to weigh Trooper Clinton's testimony, that there was – there should be an emphasis on the fact that he omitted these key details in his report, which he had a duty to fill out. Were these arguments made to the jury? These arguments were made to the jury, but it's important to remember that closing argument does not carry the same weight as a proper jury instruction issued by the court. Closing argument – Well, no, but my point is, I mean, you have the evidence, which is the jury must consider the evidence, which is the impeachment final mission was part of the evidence. There was argument on the impeachment final mission. You have 1.02 and 3.15 read together, which certainly talk about the believability of witnesses. It's up to you to decide for the jury. These things were all in front of the jury. I mean, how is one instruction that just kind of directs them down the path of 311 going to make or break this case? Your Honor, there's no way of knowing whether or not it made or broke the case, but we do have a 7-5 split here. Well, you keep saying that. What do you mean a 7-5 split? So, initially, before Mr. Singleton was convicted, the initial jury note indicated that they were humped and that seven were in favor of acquittal and five thought he was guilty. So, again, that's as close as we can get to understanding the jury's minds at this case. And it's quite possible that this instruction could have shifted the balance and led to an acquittal. And how long after that did they, after that note, did they make their decision? They actually went into the next day in order to make a decision. There was one holdout at the end of the day. And then that individual finally, because of the post-trial motion, just kind of came in and voted to find Mr. Singleton guilty. Juries are rare and unpredictable things. If you've tried enough of them and you talk to them afterward, they hang their hats on things that you would just shake your head. So, I mean, when people start arguing to us about what do questions from juries mean and 7-5 this or 5-7 that, I mean, I don't know which way you would put on that, to be honest with you. I mean, we've got to look at the record and whether the record, you know, shows a material omission. The omissions were material enough to affect the outcome of the case. Your Honor, if I could. These omissions were certainly material because identification was the heart of this case. At the end of the day, it's a simple fact that Trooper Clean saw three black males in a car. He filled out a report in which he did not provide any details of the driver's description. Who the driver was is essential to this case. Whatever happened after that, they found Singleton in the car on October 20th and November 8th is irrelevant. It was who was driving that car on October 3rd or October 5th. And like you said, we don't know what the jury's thinking. We don't know which way the jury will go. So that's why it's so important to get these instructions to guide them and to ensure that regardless of the circumstances, if there's initially a 7-5 split, that the end result is concrete and clear. In this case, there's a very strong likelihood that Mr. Singleton would have been acquitted had that instruction been given, or there's a good likelihood that he would have been acquitted had that instruction been given. If there's no other questions. Thank you. Thank you. All right. We will take the matter under advisement. We will issue a decision in due course. We are going to stand adjourned now for the day. And according to Justice Hudson, we're always subject to call, but I hope it isn't tonight.